IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW GRAB, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-1815 |
| | : | |
| v. | : | |
| | : | |
| COLUMBIA BOROUGH d/b/a | : | |
| COLUMBIA POLICE DEPARTMENT; | : | |
| SCOTT LAPP, in his individual capacity | : | |
| as a Parole Agent with Pennsylvania Board | : | |
| of Probation & Parole; BRENT KEYSER, | : | |
| in his official & individual capacity as an | : | |
| Officer with Columbia Police Department; | : | |
| and JAMES JACOBS, in his official & | : | |
| individual capacity as a Sergeant with | : | |
| Columbia Police Department, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                                          January 10, 2022

    This suit arises from a sidewalk altercation between the plaintiff, a parolee, and his parole agent, during which the plaintiff attempted to flee on foot after the parole agent ordered him to submit to being handcuffed. Before he could escape, the parole agent tasered the plaintiff once, which caused the plaintiff to fall to the ground. After the plaintiff fell to the ground, other police officers arrived on the scene, and one of them allegedly kicked the plaintiff multiple times. The plaintiff argues that the parole agent may have been directly involved in the kicking, but his own deposition testimony indisputably establishes that the parole agent was not the kicker.

    The plaintiff was then arrested and transported to the police station for processing. Within 30 minutes of being escorted to and searched at the police station, the plaintiff was transported to a local hospital where medical personnel treated him for a facial laceration.

The plaintiff initially brought this suit against the appropriate police department, the police officers who reported to the scene, and his parole agent, alleging a violation of his right to be free of excessive force under the Fourth Amendment, a *Monell* violation, failure to provide medical care, and several related state law claims. The plaintiff later voluntarily agreed to dismiss all defendants except the parole agent.

The parole agent has now filed a motion asking the court to grant him summary judgment on all claims. Since the filing of the motion, the plaintiff withdrew the *Monell* claim and the claim for failure to provide medical care. Thus, the only remaining claims are a Fourth Amendment excessive force claim against the parole agent in his individual capacity, and state law claims for assault and battery.

As discussed in more detail below, the court finds that the parole agent is entitled to summary judgment on the plaintiff's claims for excessive force relating to the parole agent's use of his taser and any claim that he kicked the plaintiff. Regarding the use-of-a-taser claim, the court concludes that the parole agent is entitled to qualified immunity because the right at issue was not clearly established at the time of the incident. Concerning the excessive force claim for being kicked, there is no competent evidence in the record that the parole agent kicked the plaintiff, and in fact, all of the record evidence is to the contrary. Finally, with regard to the plaintiff's state law claims, the court declines to exercise supplemental jurisdiction over these claims and will dismiss them without prejudice to the plaintiff to pursue them in the appropriate state court.

## I. PROCEDURAL HISTORY

The plaintiff, Matthew Grab ("Grab"), initiated this civil action by filing a complaint on April 7, 2020, against the defendants, Columbia Borough d/b/a Columbia Police Department, Chief Jack Brommer (in his official capacity as Chief of Police of the Columbia Police Department), Parole Agent Scott Lapp ("Agent Lapp") (in his individual capacity as a parole agent

with the Pennsylvania Board of Probation and Parole), and an unnamed John Doe. *See* Compl. at 1, Doc. 1. On July 30, 2020, Grab filed an amended complaint which removed the John Doe defendant and added Officer Brent Keyser ("Officer Keyser") (in his official and individual capacity as an officer with the Columbia Police Department) and Sergeant James Jacobs ("Sergeant Jacobs") (in his official and individual capacity as a sergeant with the Columbia Police Department) as named defendants. *See* Am. Comp. at 1, 2, Doc. No. 17. Three defendants, Officer Keyser, Sergeant Jacobs, and Columbia Borough, filed an answer to the amended complaint on August 13, 2020. *See* Doc. No. 21. On September 9, 2020, Agent Lapp separately filed his answer to the amended complaint. *See* Doc. No. 31.

Between March 19, 2021, and March 23, 2021, this court approved three stipulations that voluntarily dismissed all defendants in this action, except for Agent Lapp. *See* Stips. of Vol. Dismissal, Doc. Nos. 43, 44, 45. On April 19, 2021, Agent Lapp filed the present motion for summary judgment. *See* Doc. No. 51. Grab filed a response in opposition to Agent Lapp's motion on May 17, 2021. *See* Doc. No. 59. On May 24, 2021, Agent Lapp filed a reply to Grab's response in opposition. *See* Doc. No. 60. Agent Lapp's motion for summary judgment is now ripe for adjudication.

## II.   FACTUAL BACKGROUND

The majority of material facts in this case are undisputed. In May 2018, Grab was under the supervision of the Pennsylvania Board of Probation and Parole ("PBPP") as the result of a probation sentence for a previous drug conviction. *See* Def.'s Statement of Undisputed Facts ("Def.'s Facts") at ¶ 1, Doc. No. 51-2; Pl.'s Resp. in Opp'n to Def.'s Facts ("Pl.'s Resp.") at ¶ 1, Doc. No. 59-3. Agent Lapp was Grab's assigned parole agent and had previously served as Grab's parole agent for multiple periods of probation over the course of several years. *See* Def.'s Facts at

¶¶ 2–3; Pl.'s Resp. at ¶¶ 2–3. At the time of the incident, Grab had an approved residence on Chestnut Street in Columbia, Pennsylvania, but also spent time at his girlfriend's house on North 6th Street, also in Columbia. *See* Def.'s Facts at ¶¶ 5–6; Pl.'s Resp. at ¶¶ 5–6.

On May 10, 2018, while driving, Agent Lapp observed Grab's car pass him going the opposite direction. *See* Def.'s Facts at ¶ 7; Pl.'s Resp. at ¶ 7. Based on suspicions surrounding Grab's truthfulness about his recent activities, Agent Lapp made a U-turn and followed Grab to the parking lot of Valentino's Bar. *See* Def.'s Facts at ¶¶ 8–9; Pl.'s Resp. at ¶¶ 8–9. There, Agent Lapp witnessed what he believed to be a drug transaction between Grab and an unnamed man in the bar parking lot. *See* Def.'s Facts at ¶ 10; Pl.'s Resp. at ¶ 10. Planning to search Grab when he exited his vehicle, Agent Lapp proceeded to Grab's girlfriend's address on North 6th Street, where Grab had primarily been staying. *See* Def.'s Facts at ¶¶ 11–12; Pl.'s Resp. at ¶¶ 11–12. On the way, Agent Lapp contacted the Columbia Borough Police Department ("CBPD") and explained that he would be searching Grab at the girlfriend's address and asked them to provide backup. *See* Def.'s Facts at ¶ 13; Pl.'s Resp. at ¶ 13. Shortly after Agent Lapp parked near the North 6th St. address, Grab arrived and exited his vehicle. *See* Def.'s Facts at ¶ 14; Pl.'s Resp. at ¶ 14. Before Grab could enter the residence, Agent Lapp got Grab's attention and the two conversed on the concrete sidewalk. *See* Def.'s Facts at ¶ 16; Pl.'s Resp. at ¶ 16.

During this conversation, the CBPD returned Agent Lapp's earlier call and Agent Lapp indicated both that he was currently with Grab and that officers should respond to his location. *See* Def.'s Facts at ¶¶ 20–21; Pl.'s Resp. at ¶¶ 20–21. A CBPD vehicle arrived shortly thereafter, which Grab observed. *See* Def.'s Facts at ¶ 22; Pl.'s Resp. at ¶ 22. Agent Lapp then told Grab to "cuff up" and attempted to grab Grab's hand, which Grab understood as Agent Lapp wanting to handcuff him. *See* Def.'s Facts at ¶¶ 23–24; Pl.'s Resp. at ¶¶ 23–24. Grab pulled his hands away and said,

"cuff up for what; am I being violated?" and Agent Lapp answered, "not yet." *See* Def.'s Facts at ¶ 25; Pl.'s Resp. at ¶ 25. Grab also asked if he was under arrest, which Agent Lapp answered in the negative. *See* Def.'s Facts at ¶ 26; Pl.'s Resp. at ¶ 26.

Although Agent Lapp never indicated to Grab that he no longer needed to submit to being handcuffed, or told him that he was free to leave, Grab turned and began proceeding down the sidewalk away from Agent Lapp. *See* Def.'s Facts at ¶¶ 27–28; Pl.'s Resp. at ¶¶ 27–28. Grab's pace was somewhere between running and walking. *See* Def.'s Facts at ¶ 29; Pl.'s Resp. at ¶ 29. Grab heard Agent Lapp pull something out and turned back to see Agent Lapp holding his taser, at which point Grab quickened his pace to a run. *See* Def.'s Facts at ¶¶ 31–32; Pl.'s Resp. at ¶¶ 31–32. After Grab took at least several steps, Agent Lapp discharged his taser, which struck Grab in the back and caused Grab to fall to the ground.[1] *See* Def.'s Facts at ¶¶ 33–34; Pl.'s Resp. at ¶¶ 33–34.

While Grab was still on the ground, Agent Lapp attempted to handcuff Grab.[2] *See* Def.'s Facts at ¶ 35; Pl.'s Resp. at ¶ 35; *see also* Pl.'s Resp. at 15, Doc. No. 59-4. According to Grab, a CBPD police officer who had arrived on the scene in the police vehicle kicked Grab multiple times while he was on the ground.[3] *See* Def.'s Facts at ¶¶ 36–41; Pl.'s Resp. at ¶¶ 36–41. As a result of being kicked, Grab lost consciousness, and his next recollection was being in the back of a CBPD

---

[1] It is disputed how many steps Grab took before Agent Lapp discharged his taser. Grab avers that it was three steps, and Agent Lapp contends that it was four or five steps after Grab's pace had increased to a run. *See* Def.'s Facts at ¶ 33; Pl.'s Resp. at ¶ 33; *see also* Pl.'s Resp. at ¶ 29.

[2] Grab denies this and offers his own deposition testimony in opposition, but in that testimony, Grab admitted that Agent Lapp did try to handcuff him while he was on the ground, and that Agent Lapp was separate from the officer that allegedly kicked Grab. *See* Mem. of Law in Supp. of Pl.'s Resp. in Opp'n to Def.'s Mots. for Summ. J. ("Pl.'s Mem."), Ex. A, Dep. of Matthew Allen Grab Tr. at 55, Doc. No. 59-4 ("I'm saying Scott Lapp was the one cuffing me and whoever was in that cruiser is the one that kicked me in the face and all that other stuff.").

[3] *See supra* note 2. Grab now denies that Agent Lapp "was not involved" in his alleged beating and that Grab identified who kicked him. *See* Pl.'s Resp. at ¶¶ 36–38. However, as already discussed, the record is clear that Grab testified that a CBPD officer allegedly kicked him, and specifically denied that it was Agent Lapp who kicked him, and there is no evidence to the contrary.

vehicle. *See* Def.'s Facts at ¶¶ 41–42; Pl.'s Resp. at ¶¶ 41–42. One of the CBPD officers on the scene, Officer Brett Keyser, radioed for medical assistance, and Officer Keyser and another CBPD officer provided Grab with medical care in the meantime. Def.'s Facts at ¶¶ 44–45; Pl.'s Resp. at ¶¶ 44–45. Shortly thereafter, Columbia Quick Response Service ("QRS") arrived but could not transport anyone. Def.'s Facts at ¶¶ 46, 48; Pl.'s Resp. at ¶¶ 46, 48. Grab, suffering from a facial laceration but able to walk, was escorted to a CBPD vehicle for transport to the CBPD station. Def.'s Facts at ¶¶ 46–47; Pl.'s Resp. at ¶¶ 46–47. An ambulance was rerouted to meet the parties at the station. *See* Def.'s Facts at ¶ 49; Pl.'s Resp. at ¶ 49.

When the ambulance arrived at the station, the responding emergency personnel entered the station and questioned Grab. *See* Def.'s Facts at ¶ 50; Pl.'s Resp. at ¶ 50. Grab was also thoroughly searched while at the station, and that search yielded a bag of cocaine located in Grab's underwear.[4] After approximately half an hour at the station, an ambulance transported Grab and Agent Lapp to Lancaster General Hospital, where Grab was diagnosed with a fractured orbital. Def.'s Facts at ¶¶ 54–56; Pl.'s Resp. at ¶¶ 54–56.

### III. DISCUSSION

#### A. Standard of Review – Motions for Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[4] Grab objects to the inclusion of the recovered cocaine as being unfairly prejudicial under Federal Rule of Evidence 403. While the court has included it, as there is no genuine factual dispute, the court notes that it played no role in the analysis of the merits of the motion for summary judgment.

as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute"). The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of

material fact exists and that a reasonable factfinder could rule in its favor"). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Thus, it is not enough to "merely [] restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745–46 (3d Cir. 2005) (citing *Celotex*, 477 U.S. at 322). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted). Further, when one party's claims are "blatantly contradicted by the record, so that no reasonable jury could believe it," the court should not take those claims as true for the "purposes of ruling on a Motion for Summary Judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.  Analysis

In his motion for summary judgment, Agent Lapp argues that (1) Grab cannot establish that he subjected him to excessive force regarding Agent Lapp's use of his taser because (a) Agent Lapp's taser deployment was objectively reasonable under the circumstances and (b) he is entitled to qualified immunity; (2) the evidence of record shows that Agent Lapp was not personally involve in the kicks to Grab's head; (3) there is no evidence that Agent Lapp denied Grab medical care; (4) Grab cannot pursue a *Monell* claim against Agent Lapp; and (5) Grab's state law claims are barred by sovereign immunity. *See* Mem. of Law in Supp. of Def. Lapp's Mot. for Summ. J. ("Def.'s Mem.") at 3–14, Doc. No. 51. The court will address each of these arguments in turn.

#### 1.  Excessive Force – Use of Taser

Agent Lapp's first arguments pertain to his belief that he is entitled to summary judgment concerning Grab's excessive force claim relating to Agent Lapp tasing him in May 2018. Agent Lapp contends that Grab has not established an excessive force claim because the evidence in the record shows that Agent Lapp's use of his taser was objectively reasonable under the circumstances. *See id.* at 6–7. Grab argues that a genuine issue of material fact exists as to whether Agent Lapp's use of a taser on him, under the circumstances, constitutes excessive force because there are several factual disputes, such as whether Grab was under arrest, whether Grab posed a threat, and whether Agent Lapp intended to use his taser before Grab began running away.[5] *See* Pl.'s Mem. at 6, Doc. No. 59-1.

---

[5] Grab additionally asks the court to consider whether a jury could conclude that "… Defendant's subsequent beating of Plaintiff, and Defendant's failure to stop other officers from beating Plaintiff were objectively reasonable, and therefore excessive in light of the circumstances." *See* Resp. at 6, Doc. No. 59-1. The record is undisputed, from Grab's own testimony, that Agent Lapp was not the individual to have allegedly beaten or kicked Grab. Grab testified under oath that, "I'm saying Scott Lapp was the one cuffing me and whoever was in that cruiser is the one that kicked me in the face and stuff." *See* Resp. at 15, Doc. No. 59-4. During that same deposition, when directly asked if a Columbia police officer kicked Grab in the face, Grab answered "Absolutely. I know it wasn't Agent Lapp, because Agent Lapp was the one cuffing me." *Id*. Thus, the factual record is undisputed in that Agent Lapp was not the person alleged to have beaten Grab.

Claims of excessive force are analyzed under the Fourth Amendment's "'reasonableness' inquiry." *Graham v. Connor*, 490 U.S. 386, 397 (1989). That inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (citing *Scott v. United States* 436 U.S. 128, 137–39 (1978) and *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The court "ask[s] whether, 'from the perspective of the officer at the time of the incident and not with the benefit of hindsight,' the officers were objectively reasonable in their use of force." *Brown v. Makofka*, 644 F. App'x 139, 142 (3d Cir. 2016) (quoting *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015)). In determining whether the force used was objectively reasonable, the court should carefully consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

The record is clear that Agent Lapp, under the suspicion that Grab had just engaged in a drug-related activity, deployed his taser after Grab resisted being handcuffed and attempted to flee. "Federal district courts in Pennsylvania have found use of a taser to overcome a suspect's resistance to be reasonable." *McNeil v. City of Easton*, 694 F. Supp. 2d 375, 393 (E.D. Pa. 2010); *see also Geist v. Ammary*, 40 F. Supp. 3d 467, 476 (E.D. Pa. 2014) ("The use of a Taser during an arrest, especially when the suspect is resisting arrest, may be reasonable."). Grab testified that he knew Agent Lapp wanted to handcuff him, and that he ignored Agent Lapp's orders. Instead, Grab began to run away. Agent Lapp used his taser a single time to prevent Grab from fleeing the scene. Thus, it would appear that Agent's Lapp's conduct was reasonable as a matter of law.

Nevertheless, the court notes that there are several facts a reasonable jury could consider as evidence that a constitutional violation did occur. First, Agent Lapp specifically denied that Grab was under arrest. Second, Agent Lapp deployed his taser without vocally warning Grab when he was, at maximum, around five steps away. Third, there is nothing to suggest that Grab was a danger to Agent Lapp, the other officers, any bystanders, or himself. Fourth, Agent Lapp tased Grab on a concrete sidewalk, where there was some risk, no matter how small, that the taser deployment could cause Grab to fall and injure himself on the hard surface. As other courts in this district have recognized, evaluating whether the use of a taser was reasonable under the circumstances requires the court to consider the risk of bodily harm caused by the defendant's actions against the threat to the public that the defendant tried to eliminate. *Martin v. City of Reading*, 118 F. Supp. 3d 751, 762 (E.D. Pa. 2015) (citations omitted) (analyzing Third Circuit cases weighing risk of falling against necessity of taser deployment).

At this moment, it is unnecessary for the court to determine whether a reasonable jury could find that Agent Lapp violated Grab's constitutional rights, because Agent Lapp is shielded by qualified immunity. "Qualified immunity is an affirmative defense available to government officials sued in their personal capacities." *Brown v. Cwynar*, 484 F. App'x 676, 680 (3d Cir. 2012) (affirming district court grant of qualified immunity to police officer who tased 73-year-old man who refused to give officer his car keys). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (internal quotation marks omitted) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

A right is clearly established "when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id*. (internal quotations marks

omitted) (citing *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "This analysis requires a court to identify the right at issue and determine if that right was clearly established at the time of the officer's action. With respect to the first task, courts must define the right allegedly violated at the appropriate level of specificity." *Estep v. Mackey*, 639 F. App'x 870, 873 (3d Cir. 2016) ("*Estep I*") (remanding denial of qualified immunity on account of district court not defining right at issue with required level of specificity) (internal quotation marks omitted). The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021).

The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah, Oklahoma*, 142 S. Ct. at 11 (internal quotation marks omitted). Here, Agent Lapp was neither. At the time of the incident, ample precedent existed under which a reasonable officer could have believed it lawful to deploy non-lethal force to subdue an individual either fleeing or failing to comply with law enforcement orders. *See Estep v. Mackey*, Civ. A. No. 3:11-207, 2016 WL 1273249, at *2 (W.D. Pa. Mar. 31, 2016) ("*Estep II*") (granting qualified immunity on remand to police officer who deployed taser when plaintiff attempted to run away while being escorted to police station);[6] *see also McNeil*, 694 F. Supp. 2d at 393–95 (holding that two taser applications on a plaintiff attempting to evade arrest did not amount to excessive force and that officer was entitled to qualified immunity); *Wargo v. Municipality of Monroeville*,

---

[6] Much like the facts currently before this court, *Estep* involved an officer who deployed a taser to prevent an unhandcuffed individual from fleeing, after being confronted on suspicion of drug-related activities. *See Estep II*, 2016 WL 1273249. Initially, the district court denied the officer's motion for summary judgment on qualified immunity grounds, holding that genuine issues of material fact precluded it from finding that the officer's use of his taser did not constitute excessive force in violation of the Fourth Amendment. *Id*. at *3. The Third Circuit remanded the case, directing the district court to "(1) identify with specificity the right at issue that [the officer's] use of the taser allegedly violated, and (2) determine whether that right was clearly established at the time [the officer] used the taser against [the plaintiff]." *Id*. On remand, the district court found the officer to be entitled to qualified immunity because "even if the jury were to conclude that his actions amounted to a constitutional violation at trial, a reasonable officer in his position could have believed, in light of what was in the decided case law, that his conduct was lawful." *Id*. at *6 (internal quotation marks omitted).

*PA*, 646 F. Supp. 2d 777, 786 (W.D. Pa. 2009) ("Even if a plaintiff is not armed, it is reasonable for law enforcement to employ multiple rounds of non-lethal force if necessary to effectuate an arrest."); *cf. Mierzwa v. United States*, 282 F. App'x 973, 979 (3d Cir. 2008) (affirming district court in finding that officer's use of pepper spray to subdue non-compliant plaintiff was reasonable). As to the use of tasers specifically, numerous courts of appeals, including the Third Circuit, "ha[ve] approved the use of taser guns to subdue individuals who resist arrest or refuse to comply with police orders." *Brown*, 484 F. App'x at 681.

It appears that the clearly established right is question is whether a state parole officer may use a taser to subdue a supervisee when that supervise flees from the officer by running down a concrete sidewalk. The court has not located a case indicating that this action by a parole office has been clearly established as a constitutional violation. As such, the court cannot find that the right was clearly established at the time of the incident to put a reasonable officer in Agent Lapp's position on notice that his conduct was unlawful. Accordingly, Agent Lapp is entitled to qualified immunity.

### 2.    Excessive Force – Kicking

Agent Lapp also seeks summary judgment relating to any claim by Grab that he is liable for any kicks to Grab's head. Agent Lapp notes that there is no evidence in the record that he was personally involved in kicking Grab's head. *See* Def.'s Mem. at 9–10. Instead, the evidence, which includes Grab's own testimony, shows that a CBPD officer, if anyone, kicked him. *See id.* at 10–11.

In response to these arguments, Grab contends that there is an issue of fact as to whether Agent Lapp is liable for kicking him. *See* Pl.'s Mem. at 8. Grab argues that "given [Agent Lapp's] deployment of the taser right before the beating, there is a reasonable inference that [Agent Lapp]

was involved in the immediate events following the taser deployment." *Id.* He also asserts that "even if [Agent Lapp] was not involved (which is unbelievable), [Agent Lapp] had a duty to intervene and stop [Grab's] unlawful beating, which he failed to do." *Id.* Finally, he claims that "but for [Agent Lapp's] actions prior to the beating, [Grab] would not have been beaten. A tortfeasor is liable for subsequent torts if he sets those chain of events in motion." *Id.* (citing *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928)).

None of the plaintiff's arguments have any merit. "[I]n the face of [a] motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs[.]"). Here, and as explained earlier in this opinion, Grab concedes that Agent Lapp was not the individual who kicked him; instead, it was an unidentified CBPD officer. *See supra* at 5 n.3. Thus, Grab's own evidence does not support a jury determination that Agent Lapp did anything to him other than tase him, and there is no other evidence in the record that would create an issue of fact that would allow this claim to move forward to trial.

Grab's other arguments in support of liability are easily disposed of. First, contrary to Grab's assertion, merely using a taser to subdue Grab as he tried to flee does not support a "reasonable inference" that Agent Lapp was involved in whatever happened afterwards, especially when Grab himself said that Agent Lapp did not kick him. Second, Grab does not explain how the *Palsgraf* foreseeability doctrine applicable to proximate cause determinations in negligence actions has any applicability to an excessive force claim. Finally, although Grab makes a fleeting reference to Agent Lapp failing to intervene, he never asserted such a claim in his amended

complaint to place the defendants on notice that he was pursuing such a claim.[7] *See generally* Am. Compl. at 2–9, Doc. No. 17. As such, the court will not consider any failure to intervene claim here.

### 3. Refusal to Provide Medical Care and *Monell* Claims

Agent Lapp also moves for summary judgment on Grab's refusal to provide medical care and *Monell* claims. Grab's response in opposition to Agent Lapp's motion for summary judgment includes voluntary withdrawals of Count II and Count III of the operative complaint. *See* Pl.'s Mem. at 10. Accordingly, the claim for failure to provide medical care and the claim for violations under *Monell* are dismissed and require no further analysis. *See Id*.

### 4. State Law Claims

In the final part of his motion, Agent Lapp asserts that the court should grant summary judgment on Grab's state law claims for assault and battery. Because the court has already determined that Agent Lapp is entitled to summary judgment on Grab's federal claims and only the state law claims remain, the court must determine whether to exercise supplemental jurisdiction over those claims. In such circumstances, the court,

> "may decline to exercise supplemental jurisdiction" if the court "has dismissed all claims over which it has original jurisdiction." [28 U.S.C.] § 1367(c)(3) .... [I]n most cases, pendent state law claims should be dismissed without prejudice "where the claim over which the district court has original jurisdiction is dismissed before trial." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). On the other hand, "[w]here the original federal jurisdiction claim is proceeding to trial ... considerations [of judicial economy, convenience, and fairness to the parties] will normally counsel an exercise of district court jurisdiction over state claims based on the same nucleus of operative facts." *Id.*

---

[7] This court recognizes that while "legally distinct, the fate of [a] plaintiff's failure to intervene claim is closely linked to that of [an] excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene." *Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005). Nonetheless, Grab never brought a failure-to-intervene claim at any point in this action, discovery is now closed, and he never sought leave to amend his complaint to include such a claim. Asserting it as a possible ground for liability in a response to a motion for summary judgment is wholly improper, and Grab has not asserted any basis why he should be permitted to proceed with such a claim at this time.

*Cindrich v. Fisher*, 341 F. App'x 780, 789 (3d Cir. 2009) (per curiam).

After weighing considerations of judicial economy, convenience, and fairness to the parties, the court declines to exercise supplemental jurisdiction over the state law assault and battery claims and dismisses them without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the court finds that Agent Lapp is entitled to qualified immunity on Grab's excessive force claim because Agent Lapp's conduct did not violate clearly established statutory or constitutional rights by using non-lethal force on Grab under the circumstances. Grab voluntarily withdrew his *Monell* claim and failure to provide medical care claim. Accordingly, the court: (1) grants the defendant's motion for summary judgment as to Agent Lapp's federal claims and, (2) declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without prejudice.

A separate order follows.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.